Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Ben M. Harrington (SBN 313877)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
benh@hbsslaw.com

Eamon P. Kelly (*pro hac vice*)
Joseph M. Vanek (*pro hac vice*)
**SPERLING & SLATER, LLC**
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Telephone: (312) 676-5845
Facsimile: (312) 641-6492
ekelly@sperling-law.com
jvanek@sperling-law.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AFFINITY CREDIT UNION, GREENSTATE CREDIT UNION, AND CONSUMERS CO-OP CREDIT UNION<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 4:22-cv-04174-JSW<br><br>**OPPOSITION TO MOTION TO STAY DISCOVERY**<br><br>Date: April 21, 2023<br>Time: 9:00 a.m.<br>Place: Courtroom 5, 2nd Floor, Oakland<br>Judge: The Honorable Jeffrey S. White |

011032-12/2225145 V1

**I.     PRELIMINARY STATEMENT**

Every motion to dismiss can theoretically end the case. But if this were enough to stay all discovery, as Apple contends, then discovery could never commence during the pendency of a motion to dismiss. The rule in this Circuit is precisely the opposite. By default, discovery proceeds in the normal course pending resolution of a Rule 12(b)(6) motion. Motions to stay are disfavored and granted only upon a showing of "good cause." Apple has not made that showing.

*First,* in determining whether to stay discovery, courts often entertain a "peek" at the pending dispositive motion and grant a stay only where facial pleading deficiencies make dismissal inevitable, or at least highly probable. That is not the case here. Apple's principal argument—that Plaintiffs cannot plead a "single brand market"—was essentially rejected by this Court just a year ago in another action involving Apple. *See AliveCor, Inc. v. Apple Inc.*, 2022 WL 833628, at *7 (N.D. Cal. Mar. 21, 2022) (White, J.). Apple's remaining arguments—mainly concerning market definition and tying—interject factual questions that cannot properly be resolved at this stage. Dismissal is far from preordained. *See infra* Point IV.A.

*Second*, Apple cannot establish good cause for a stay because there are no pending discovery requests to stay, much less requests that could be characterized as unduly burdensome. Plaintiffs have yet to propound any requests because Apple has refused to participate in the Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1). Apple cannot justify staying *all* discovery, sight unseen, without any particularized showing of disproportionality. And as a practical matter, Plaintiffs intend to only lay the foundation for full discovery during the pendency of Apple's motion to dismiss. In particular, Plaintiffs envision a ramp-up phase, addressed further below, in which the parties exchange initial disclosures and information to facilitate discovery, agree on procedures for discovery, and Apple provides only documents and information *already produced* to (or received from) the European Commission and other regulators investigating Apple Pay.[1] Reproduction of

---

[1] The European Commission opened an antitrust investigation into Apple Pay in June 2020. In May 2022, the European Commission issued a statement of objections, concluding preliminarily that Apple "restricts competition [] by reserving access to NFC technology to Apple Pay." *See* https://ec.europa.eu/commission/presscorner/detail/es/ip_22_2764.

1  materials that have already been collected, screened for privilege, and provided to government
2  bodies will entail minimal burden, and it will encourage orderly progress in the case while the
3  motion to dismiss is pending. *See infra* Point IV.B.

## II.   BACKGROUND

Apple Pay is the only tap-and-pay digital wallet available iOS devices, but not because Apple built a superior wallet.  From a functionality standpoint, Apple Pay is comparable to other digital wallets available to owners of non-iOS devices (*e.g.*, Google Pay or Samsung Pay).  Apple Pay dominates on iOS devices only because Apple has excluded all rivals.  It has done so by hoarding the Near Field Communication or "NFC" technology needed for tap-and-pay functionality.  *See* Am. Compl. ¶ 4.  While iOS app developers may generally access the NFC chip in Apple's devices, Apple bars access to digital wallet apps, and digital wallet apps only.  *See id.* ¶ 49.  The purpose and effect of this restriction is to insulate Apple Pay from competition.

With no competing wallets to discipline its pricing, Apple charges payment card issuers like Plaintiffs supracompetitive transaction fees when their cards are used through Apple Pay.  These fees can reach 15 basis points per transaction, and generate billions in ill-gotten gains for Apple.  By contrast, in the Android ecosystem, where multiple digital wallets vie for market share, issuer transaction fees have been competed away entirely—they are $0.  *See id.* ¶¶ 5-6.

Asserting claims under the Sherman Act, Plaintiffs contend that Apple has monopolized and attempted to monopolize the market for Tap-and-Pay iOS Mobile Wallets.  Plaintiffs further allege that, by preventing rivals from offering competing digital wallets, Apple has tied Apple Pay to its sale of iOS mobile devices.  *See id.* ¶¶ 150-181.

On October 7, 2022, Apple moved to dismiss Plaintiffs' initial complaint and to stay discovery pending the motion's resolution.  *See* ECF No. 32 & 33.  Plaintiffs opposed the discovery stay on October 14, 2022.  *See* ECF No. 37.  Shortly thereafter, the Court continued the initial case management conference without adjudicating Apple's stay motion.  *See* ECF No. 38.  Plaintiffs amended their complaint as of right on October 28, 2022, and Apple's renewed motion to dismiss was fully briefed as of February 6, 2023.  *See* ECF Nos. 40, 44-46.

OPPOSITION TO MOTION TO STAY - 2
Case No.: 4:22-cv-04174-JSW
011032-12/2225145 V1

1    Under the operative schedule, March 3, 2023 was Apple's deadline to participate in a Rule 26(f) conference, which would open discovery pursuant to Rule 26(d)(1).  *See* ECF No. 43 (setting initial case management conference for March 24, 2023); Fed. R. Civ. P. 26(f)(1) (requiring 26(f) conference at least 21 days before initial case management conference).  Apple declined to participate in a 26(f) conference and, after letting the deadline pass, filed its instant motion to stay all discovery on March 10, 2023.

### III.    LEGAL STANDARD

A court may stay discovery only upon showing of "good cause" by the moving party.  Fed. R. Civ. P. 26(c)(1).  "Generally, such motions are disfavored because discovery stays may interfere with judicial efficiency and cause unnecessary litigation in the future."  *Otey v. CrowdFlower, Inc*., 2013 WL 1915680, at *1 (N.D. Cal. May 8, 2013).[2]  "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect."  *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co*., 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018).  They do not.

To secure a stay, the moving party "carries the heavy burden of making a strong showing why discovery should be denied."  *Smith v. Levine Leichtman Cap. Partners, Inc*., 2011 WL 13153189, at *1 (N.D. Cal. Feb. 11, 2011) (White, J.).  As Apple notes, courts consider whether the pending motion (1) is "potentially dispositive of the entire case" and (2) "can be decided absent additional discovery."  *Id*.  But what Apple fails to mention is that these are necessary, not sufficient, conditions to stay discovery.  Even "[w]ith both factors satisfied," courts must still consider "whether Defendants have demonstrated good cause to stay discovery."  *Id.* at *2 (denying motion to stay where two factors were satisfied but no good cause shown).  As part of this larger inquiry, courts often take a "preliminary peek" at the pending dispositive motion, with good cause being established only if the Court can "say with confidence" that the motion will be granted.  *See Anderson v. SeaWorld Parks & Ent., Inc*., 2017 WL 6448206, at *2 (N.D. Cal. Dec. 18, 2017) (White, J.).

---

[2] Internal citation, ellipses, and bracket marks omitted here and throughout.

IV.     ARGUMENT

Apple cannot demonstrate good cause to stay discovery for two independent reasons.  *First*, a peek at Apple's motion to dismiss does not reveal pleading deficiencies sufficient to stay all discovery.  *Second*, having sought to engage in self-help by refusing to participate in the Rule 26(f) conference, Apple cannot make the particularized showing of disproportionality needed for a stay.  Its motion is thus premature, at best.

**A.     Apple Is Unlikely to Prevail on its Motion to Dismiss.**

From a "peek" at Apple's motion to dismiss, it is far from apparent that Apple will secure a dismissal of Plaintiffs' claims.  Apple's primary argument is that Plaintiffs improperly plead a "single brand market."  *See* ECF No. 44 at 6-9.  This is not the case.  The alleged product market—Tap and Pay iOS Mobile Wallets—is brand neutral. *See* ECF No. 45 at 2-3.  Regardless, Apple's "single brand" argument was rejected by this Court in *AliveCor*, 2022 WL 833628, at *7 (White, J.).  There, the Court held that parties can "plausibly assert a single-brand aftermarket at the pleading stage."  *See id.* (citing *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038 (9th Cir. 2008)).

Plaintiffs have alleged all features of an aftermarket, as identified by this Court in *AliveCor*:

> [T]o plausibly assert a single-brand aftermarket at the pleading stage, a plaintiff must adequately allege that (1) the aftermarket is wholly derivative from the primary market; (2) illegal restraints of trade relate only to the aftermarket; (3) the defendant did not achieve market power in the aftermarket through contractual provisions that it obtains in the initial market; and (4) competition in the initial market does not suffice to discipline anticompetitive practices in the aftermarket.

*Id.*  Tracking these factors, Plaintiffs sufficiently allege that the market for Tap-and-Pay iOS Mobile Wallets derives from the primary smartphone and mobile device markets in which Apple operates. *See* Am. Compl. ¶ 75. The challenged restraint (foreclosure of rival wallets) relates only to the aftermarket.  *See id.* ¶ 76.  Apple's market power in the aftermarket was not secured contractually in the primary market.  *See id.* ¶ 77.  And competition in the primary market does not discipline Apple's practices in the aftermarket.  *See id.* ¶¶ 78-84; *see also* ECF No. 45 at 3-6.

Beyond advancing arguments this Court has largely rejected, Apple's motion to dismiss turns on numerous disputed issues of fact that cannot be resolved against Plaintiffs on the pleadings.  Most of Apple's argument relates to market definition and the cross-elasticity of demand between Apple

1   Pay and other payment modes.  *See* ECF No. 44 at 7-9.  At bottom, these are factual issues.  *See*
2   *Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 363 (9th Cir. 1988) ("Our previous decisions
3   establish that both market definition and market power are essentially questions of fact.").  Apple
4   also contends that no tying claim can be pled because Apple Pay is an "integrated component of
5   Apple devices."  ECF No. 44 at 13.  This assertion of fact conflicts with Plaintiffs' well-pleaded
6   allegations, *see* ECF No. 45 at 11-12, and cannot be credited on a motion to dismiss.  *See Ciuffitelli*
7   *v. Deloitte & Touche LLP*, 2016 WL 6963039, at *4 (D. Or. Nov. 28, 2016) (holding that discovery
8   stay may be appropriate so long as "the pending dispositive motion does *not* raise fact issues"
9   (emphasis added)). ‼

10  Plaintiffs do not suggest that the Court must prejudge Apple's motion to dismiss to determine
11  whether a stay may issue.  It is enough to determine, based on a "peek," that Plaintiffs can potentially
12  state a claim for relief.  Because Plaintiffs can state (and have stated) potentially viable claims,
13  discovery should accordingly proceed in the ordinary course.  *See Anderson*, 2017 WL 6448206
14  (White, J.) (denying motion to stay where, based on a "preliminary peek," the Court was unable to
15  "say with confidence that [defendant] will be able to show there are no material facts in dispute").

16  **B.     Apple Cannot Establish Good Cause For a Stay Because Its Motion is Premature.**

17  In determining whether good cause to stay discovery is present, Courts typically require a
18  "particularized showing" as to the burdens of the discovery being pursued.  *See Optronic Techs.,*
19  *Inc.*, 2018 WL 1569811, at *2.  "Discovery is not stayed just because it imposes *some* burden."  *Id.*
20  It should go without saying that courts "cannot evaluate the burden and proportionality of the
21  discovery until discovery has opened."  *Allen v. Protective Life Ins. Co.*, 2020 WL 5074021, at *3
22  (E.D. Cal. Aug. 27, 2020).

23  Here, no discovery has been propounded because Apple has refused to participate in a 26(f)
24  conference.  At a minimum, Apple's motion to stay must therefore be denied as premature.  *See id.*
25  (denying "as premature" motion to stay filed prior to 26(f) conference and the proper initiation of
26  discovery).  Once discovery commences, Apple will be free to seek relief from any discovery
27  demands it considers overly burdensome, but these issues cannot properly be resolved in a vacuum
28  without any discovery request to assess.

OPPOSITION TO MOTION TO STAY - 5
Case No.: 4:22-cv-04174-JSW
011032-12/2225145 V1

1  Plaintiffs' requests will not be overly burdensome. Far from it, before the motion to dismiss is resolved, Plaintiffs seek only the re-production of documents Apple has already provided to, or received from, the European Commission or other regulators investigating its Apple Pay product. Reproducing documents that have already been collected and provided to (or received from) a governmental body involves "minimal" burden. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2008 WL 5448235, at *1 (N.D. Cal. 2008). Beyond the re-production of these previously compiled documents, Plaintiffs envision using the pendency of the motion to dismiss to exchange initial disclosures, organization charts, and written discovery requests so that they may work through objections, negotiate discovery protocols, and narrow disputes. This will allow actual discovery to commence expeditiously (and with minimal Court intervention) in the event Apple's motion to dismiss is denied. As part of this process, Plaintiffs may request an anonymized data sample to inform discussions around the nature and scope of discoverable data, but Plaintiffs would not be requesting the actual production of data until after Apple's motion to dismiss is resolved.

This is the efficient, and proportional, path forward. Notably, it is the path this Court followed recently in *AliveCor*, No. 4:21-cv-3958 (N.D. Cal.). There, as here, the Court continued the case management conference pending resolution of Apple's motion to dismiss, but without foreclosing the parties from participating in a 26(f) conference and initiating discovery. *See id.*, ECF No. 28. Accordingly, during the pendency of Apple's dispositive motion, the parties exchanged initial disclosures, requests for production, and interrogatories. *See id.*, ECF No. 55 at 1. And through meet-and-confers, the parties reached "substantial compromise and resolution of the vast majority of potential disputes over the scope of each side's respective document searches." *Id.* Thus, when the motion to dismiss was decided, only limited disputes remained and the parties were positioned to advance the case without starting from square one. Apple has identified no reason, much less good cause, to do anything different here.

### V.  CONCLUSION

For the reasons foregoing, Plaintiffs respectfully request that Apple's request to stay all discovery pending resolution of its motion to dismiss be denied.

OPPOSITION TO MOTION TO STAY - 6
Case No.: 4:22-cv-04174-JSW
011032-12/2225145 V1

| | | |
|---|---|---|
| 1 | DATED: March 24, 2023 | Respectfully submitted, |
| 2 | | **HAGENS BERMAN SOBOL SHAPIRO LLP** |
| 3 | | By  /s/ Steve W. Berman |
| 4 | |      Steve W. Berman (*pro hac vice*) |

1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steveb@hbsslaw.com

Ben M. Harrington (SBN 313877)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
benh@hbsslaw.com

**SPERLING & SLATER, LLC**
Eamon P. Kelly (*pro hac vice*)
Joseph M. Vanek (*pro hac vice*)
Jeffrey Bergman (*pro hac vice*)
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Telephone: (312) 676-5845
Facsimile:  (312) 641-6492
ekelly@sperling-law.com
jvanek@sperling-law.com
jbergman@sperling-law.com

*Attorneys for Plaintiffs and the Proposed Class*