1
2
3
4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    AFFINITY CREDIT UNION, et al.,          Case No.  22-cv-04174-JSW

8                     Plaintiffs,

9           v.                               **ORDER GRANTING IN PART AND
                                             DENYING IN PART DEFENDANT'S
10   APPLE INC.,                             MOTION TO DISMISS PLAINTIFFS'
                                             AMENDED CLASS ACTION
11                    Defendant.             COMPLAINT**

12                                           Re: Dkt. No. 44

13        Now before the Court is Defendant Apple Inc.'s Motion to Dismiss Plaintiff's Amended

14   Class Action Complaint.  The Court has considered the parties' papers, relevant legal authority,

15   and the record in this case, and finds the matter suitable for disposition without oral argument.[1]

16   *See* N.D. Civ. L.R. 7-1(b).  For the following reasons, the Court hereby GRANTS, IN PART,

17   AND DENIES, IN PART, Defendant's motion.

18                              **BACKGROUND**

19        Plaintiffs Affinity Credit Union, GreenState Credit Union, and Consumers Co-Op Credit

20   Union (collectively, "Plaintiffs") filed a complaint against Apple, Inc. ("Apple"), alleging that

21   Apple unlawfully monopolized the market for tap-and-pay mobile wallets for the iPhone, iPad,

22   and Apple Watch.[2]  (Compl. ¶ 4.)

23        According to Plaintiffs, Apple equips the iPhone, iPad, and Apple Watch with "Near Field

24   Communication" or "NFC" chips.  (*Id.* ¶¶ 1, 4.)  Plaintiffs allege that NFC technology was

25

26   _____

     [1] The Court has also received and considered the subsequent authorities submitted by the parties.
27   (*See* Dkt. Nos. 62, 63.)
     [2] Plaintiffs acknowledge that the operating systems for the iPhone, iPad, and Apple Watch differ,
28   but for ease of reference and due to overlapping core features, refer to all three mobile operating
     systems collectively as "iOS."  (*Id.*)  The Court will do the same.

standardized by Sony and Phillips prior to the development of Apple's smart mobile devices, and that NFC is used in numerous non-Apple products for a wide range of applications. (*Id.* ¶¶ 35-37.) As relevant here, an NFC chip enables a smart device to send a wireless signal to an NFC-enabled payment terminal from close proximity, allowing a consumer to "tap" his or her mobile device against the payment terminal in order to complete a transaction. (*Id.* ¶ 1.)

Plaintiffs allege that Apple has developed a mobile wallet, Apple Pay, which works with the NFC chips in iOS devices for tap-and-pay transactions. (*Id.* ¶ 2.) Plaintiffs allege that a consumer who purchases an iOS device also receives Apple Pay. (*Id.* ¶ 10.) Plaintiffs allege that Apple limits access to the NFC chip in iOS devices to Apple Pay for the purpose of tap-and-pay mobile wallets but enables access the NFC chip for other purposes, such as "scanning a toy to connect it with a video game." (*Id.* ¶¶ 2, 49.)

Non-Apple mobile devices, including those using Android OS, also use NFC technology for tap-and-pay mobile wallets. (*Id.* ¶ 3.) Plaintiffs allege that manufacturers which use Android OS do not restrict access to NFC technology for any purpose. (*Id.*) As a result, according to Plaintiffs, Android OS consumers have their choice of multiple competing tap-and-pay wallets, such as Google Pay and Samsung Pay. (*Id.*)

Plaintiff Affinity Credit Union and Plaintiff GreenState Credit Union allege that they are Iowa-chartered credit unions, and that each issues payment cards and participates in Apple Pay. (*Id.* ¶¶ 17, 18.) Plaintiff Consumers Co-Op Credit Union alleges that it is an Illinois-chartered credit union, and that it too issues payment cards and participates in Apple Pay. (*Id.* ¶ 19.) Plaintiffs allege that they pay supracompetitive issuer-transaction fees on purchases made with Apple Pay because Apple prohibits mobile wallets other than Apple Pay from utilizing the NFC chip on iOS devices. (*Id.* ¶¶ 5, 6, 17-19.)

A.      **Product Market Allegations.**

Plaintiffs focus their allegations on Apple's purported exclusionary conduct regarding tap-and-pay mobile wallets. However, Plaintiffs allege that Apple abuses monopoly power in multiple markets, including the market for smart phones, tablets, and smart watches.

1

### 1. The Tap-and-Pay iOS Mobile Wallet Market.

Plaintiffs allege a market or aftermarket for tap-and-pay mobile wallets on iOS devices. (*See id.* ¶ 53.)  Plaintiffs allege that other payment forms such as cash or cards are not reasonably interchangeable with tap-and-pay iOS mobile wallets because tap-and-pay iOS mobile wallets are faster and easier to use, as well as more sanitary.  (*Id.* ¶ 54.)  Plaintiffs also allege that tap-and-pay iOS mobile wallets provide security advantages over traditional forms of payment due to tokenization of card numbers.  (*Id.* ¶ 55.)  Plaintiffs allege that QR-code payment apps and tap-and-pay Android OS mobile wallets are not products in the tap-and-pay iOS mobile wallets market because they lack the same functionality and convenience as tap-and-pay iOS mobile wallets or, in the case of tap-and-pay Android OS mobile wallets, switching costs between iOS and Android OS devices are too high.  (*Id.* ¶¶ 59-73.)

### 2. The Smartphone Market.

According to Plaintiffs, a smartphone is a mobile device that allows people to access the internet anytime and anywhere with a cellular or wireless connection.  (*Id.* ¶ 22.)  Smartphones are used for shopping, navigation, social media, telephone calls, and more.  (*Id.*)  Plaintiffs allege that there is no reasonably close substitute for a smartphone because of its broad functionality and mobility.  (*Id.* ¶ 23.)

### 3. The Tablet Market.

Plaintiffs allege that there is a distinct product market for tablets, which they allege are marketed as a "third category of device" between laptops and smartphones.  (*Id.* ¶ 27.)  Plaintiffs allege that tablets are less mobile than smartphones but offer more mobility than laptops and can be used to perform a range of productivity tasks.  (*Id.* ¶¶ 28-29.)

### 4. The Smart Watch Market.

Plaintiffs allege that smart watches are wearable devices that offer apps and cellular connectivity, much like smartphones.  (*Id.* ¶ 31.)  According to Plaintiffs, smart watches provide a range of functions related to monitoring the health and fitness of the wearer.  (*Id.* ¶ 32.)  However, Plaintiffs allege that smart watches do not replace smartphones or tablets and are typically paired with another smart device.  (*Id.* ¶ 33.)

United States District Court
Northern District of California

3

United States District Court
Northern District of California

**B.      Market Share Allegations.**

Plaintiffs allege that Apple possesses a 100% monopoly in the U.S. market for tap-and-pay iOS mobile wallets.  The only product available in the tap-and-pay iOS mobile wallet market is Apple Pay, a tap-and-pay iOS mobile wallet owned by Apple.  (*Id.* ¶ 4.)  Plaintiffs allege that Apple also possesses dominant market power in the smart device markets.  Plaintiffs allege that the Apple iPhone had a 57% share of the U.S. smartphone market in 2022.  (*Id.* ¶ 25.)  Plaintiffs allege that Apple's iPad had a 54% share of the U.S. tablet market in 2022.  (*Id.* ¶ 30.)  Finally, Plaintiffs allege that Apple's Apple Watch currently has an approximately 46% share of the U.S. smart watch market.  (*Id.* ¶ 34.)

Plaintiffs further allege that competition in the smartphone, tablet, and smart watch markets does not constrain Apple's power in the tap-and-pay iOS mobile wallet market because of high switching costs and consumer lock-in.  (*Id.* ¶ 61.)  Plaintiffs also allege that Apple has monopoly power over locked-in iOS device users.  (*Id.* ¶¶ 79-82.)

**C.      Allegations of Anticompetitive Conduct.**

Plaintiffs allege that Apple harms competition by limiting access to the NFC chip in iOS mobile devices to Apple Pay and apps without payment functionality.  (*Id.* ¶¶ 2, 49.)  Plaintiffs allege that, although iOS device consumers never agree that they will exclusively use Apple Pay as their tap-and-pay iOS mobile wallet, iOS device consumers are nevertheless coerced to use Apple Pay by exclusion of tap-and-pay iOS mobile wallet competitors.  (*Id.* ¶ 47.)

Plaintiffs allege a violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. sections 1 and 3, by tying the Apple Wallet to iOS mobile device markets.  (*Id.* ¶ 151.)  Plaintiffs further allege monopolization and attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. section 2.  (*Id.* ¶¶ 161-181.)

**ANALYSIS**

**A.      Legal Standard Applicable to a Motion to Dismiss.**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[D]etailed factual allegations are not required" to survive a motion to dismiss if the complaint contains sufficient factual allegations to

4

1   "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

2   S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct.

3   1955, 167 L.Ed.2d 929 (2007)).  "Labels and conclusions[] and a formulaic recitation of the

4   elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

5     When a party moves to dismiss for failure to state a claim under Rule 12(b)(6), a district

6   court accepts as true all well-pleaded material facts and draws all reasonable inferences in favor of

7   the plaintiff. *Faulkner v. ADT Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).  A district court

8   should grant leave to amend unless the court determines the pleading could not "possibly be cured

9   by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

10  **B.**  **Plaintiffs Plausibly Allege a Relevant Product Market.**

11    Apple first argues that the amended class action complaint (the "FAC") fails to allege a

12  plausible product market, thereby dooming each of Plaintiffs' Sherman Act claims.  To state a

13  claim under the Sherman Act, a plaintiff must allege that a relevant market exists and that the

14  defendant has power within that market. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038,

15  1044 (9th Cir. 2008).  The definition of a "relevant market" is typically a factual inquiry and need

16  not be pled with specificity, but dismissal is appropriate if a fatal legal defect is apparent from the

17  face of the complaint. *Id.* at 1045.

18    To avoid a fatal legal defect, the relevant market must be a "product market," rather than a

19  market whose boundaries are delineated by consumers. *Id.* (citations omitted).  The market at

20  issue must encompass the product at issue as well as all economic substitutes for the product. *Id.*

21  The relevant market must include the group of competitors "who have [the] actual or potential

22  ability to deprive each other of significant levels of business." *Thurman Indus., Inc. v. Pay 'N Pak*

23  *Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989).  To assess the outer boundaries of a product

24  market, a court must look to whether the market, as the plaintiff defined it, includes all reasonably

25  interchangeable products and whether there is cross-elasticity of demand between the product and

26  its substitutes. *Olin Corp. v. FTC*, 986 F.2d 1295, 1298-99 (9th Cir. 1993).  "If consumers view

27  the products as substitutes, the products are part of the same market." *Rebel Oil Co. v. Atlantic*

28  *Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995).  A court must consider not merely "formalistic

United States District Court
Northern District of California

5

distinctions" but "actual market realities." *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2285, 201 L. Ed. 2d 678 (2018) (quoting *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 466-67, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992)).

Plaintiffs allege that Apple abuses monopoly power in the tap-and-pay iOS mobile wallets market, which they expressly allege to be an aftermarket. (Compl. ¶¶ 11, 74-84.)  Apple argues that the tap-and-pay iOS mobile wallets market is an implausible single-brand market, which should be rejected because single-brand markets are disfavored.  Apple contends that Plaintiffs artificially narrow the antitrust relevant market by excluding other forms of payment such as cash, physical credit cards, QR code-based payments, or Google Pay.  Apple further argues that the tap-and-pay iOS mobile wallets market cannot be an aftermarket, because Apple Pay is included in the purchase of iOS devices.  Plaintiffs respond that they have adequately alleged that Apple has a 100% monopoly of the tap-and-pay iOS mobile wallet market, and that a 100% monopoly should not shield a monopolist from antitrust claims in the name of avoiding single-brand markets. Plaintiffs further argue that they have alleged an aftermarket, which may be comprised of a single brand, and that the inclusion of Apple Pay with the purchase of an iOS device does not preclude a finding of an aftermarket because consumers must take additional steps to enable Apple Pay.

Single brand markets may be "extremely rare," *Reilly v. Apple, Inc.*, 578 F. Supp. 3d 1098, 1107 (N.D. Cal. 2022) (quoting *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008)), but "it is legally permissible to premise antitrust allegations on a submarket" or an aftermarket. *Newcal*, 513 F.3d at 1045, 1049.  An aftermarket exists "where demand for a good is entirely dependent on the prior purchase of a durable good in a foremarket." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 976 (9th Cir. 2023).  An alleged aftermarket must "bear the practical indicia" of an independent product market. *Id.* at 977 (quotations omitted).  An aftermarket exists if: "(1) the challenged aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase; (2) 'significant' information costs prevent accurate life-cycle pricing; (3) 'significant' monetary or non-monetary switching costs exist; and (4) general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market." *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Here, Plaintiffs have plausibly alleged an aftermarket for tap-and-pay iOS mobile wallets.

2   Plaintiffs allege that consumers are not privy to the tap-and-pay iOS mobile wallet constraints at

3   the time of purchase of an iOS device, and that consumers of iOS devices expect to be able to

4   obtain tap-and-pay alternatives to Apple Pay.  Plaintiffs further allege that users face high

5   switching costs after purchase, and they plausibly claim that other forms of payment are not

6   reasonable substitutes for Apple Pay.  *Cf. United States v. Microsoft Corp.*, 253 F.3d 34, 52 (D.C.

7   Cir. 2001) (affirming exclusion of Mac OS was not part of the antitrust relevant market because

8   Microsoft did not challenge finding of high switching costs between Windows and Mac OS).

9   Finally, Plaintiffs allege that general principles of cross-elasticity of demand are not present

10  because Apple does not permit issuers to pass on transaction fees to consumers.

11  Plaintiffs have also plausibly alleged that Apple Pay and iOS devices are separate products

12  which can give rise to the existence of an aftermarket.  Apple has not met its burden to show that

13  Apple Pay and iOS devices are a single product given the allegations in the FAC.  Plaintiffs have

14  alleged that demand exists for tap-and-pay iOS mobile wallets, and that the exclusion of the

15  wallets from iOS devices adversely affects competition in the antitrust relevant market.  Making

16  all reasonable inferences in favor of the FAC, the Court finds that Plaintiffs have plausibly alleged

17  that Apple Pay is a separate product in a distinct product market from iOS devices.

18  Apple points to two prior decisions to demonstrate that the tap-and-pay iOS mobile wallet

19  market is implausible as a single-brand market, but those cases do not aid Apple because the

20  plaintiffs in those cases failed to plead aftermarkets.  In *Reilly*, the Court dismissed antitrust claims

21  against Apple where the alleged product market was "the iOS App Distribution Market,"

22  consisting entirely of Apple's App Store.  578 F. Supp. 3d at 1107.  The Court acknowledged that

23  single-brand markets may be plausible where the plaintiff alleges an aftermarket, but the *Reilly*

24  plaintiff did not allege either an aftermarket or facts sufficient to find an aftermarket.  *Id.*  The

25  complaint was accordingly dismissed without prejudice.  *Id.* at 1108.

26  Similarly, the plaintiff in *Apple, Inc. v. Psystar Corp.* alleged a single brand primary

27  market rather than a single brand aftermarket. 586 F. Supp. 2d at 1197.  In that case, defendant

28  Psystar brought a counterclaim alleging monopolization of the "Mac OS market" due to Apple's

7

prohibition on running Mac OS on non-Apple hardware systems. *Id.* Psystar did not allege switching costs or customer "lock in" to the Mac OS market. *Id.* The Court rejected the idea that there was a "Mac OS-compatible computer hardware systems" market because Apple contractually restricted use of Mac OS contemporaneously with device purchase. *Id.* at 1201. The court nevertheless permitted Psystar to move for leave to amend. *Id.* at 1204.

Plaintiffs' allegations are sufficient to pursue a claim based on the alleged aftermarket. The Court DENIES Apple's motion to dismiss on this basis.

**C.      Plaintiffs Do Not State a Claim for Tying in Violation of the Sherman Act.**

As set forth above, Plaintiffs have plausibly alleged the existence of a tap-and-pay iOS mobile wallet market. Plaintiffs allege that Apple has unlawfully tied Apple Pay, a product in the tap-and-pay iOS mobile wallet market, with Apple mobile devices, products in the smartphone product market, tablet product market, and smart watch product market. (Compl. ¶ 151.)

**1.      The FAC Establishes Standing for Plaintiff's Tying Claim.**

To establish antitrust standing, a plaintiff must meet "the more demanding antitrust standing standard." *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 540 (9th Cir. 1987). Antitrust standing is established "on a case-by-case basis," considering: (1) whether the nature of the plaintiff's injury is of the type the antitrust laws were intended to prevent; (2) the directness of the injury; (3) whether the harm is speculative; (4) risk of duplicative recovery; and (5) complexity in apportioning damages. *Id.* (citing *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 538-45 (1983)) (the "*Associated General Contractors* factors"). Apple argues that, as issuers, Plaintiffs cannot show an antitrust injury and satisfy the first factor.

In order to allege an antitrust injury, a plaintiff must allege it participates in the same market as the allegedly anticompetitive participant, meaning that the plaintiff must be a consumer or a competitor. *Eagle*, 812 F.2d at 540 (citing *Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985)). Where a plaintiff seeks to establish an antitrust injury in a multi-sided platform such as credit card transactions, the Court must consider the alleged anticompetitive conduct in the context of the multi-sided transaction rather than splitting the transaction into discrete parts. *American Express Co.*, 138 S. Ct. at 2287. Apple argues that Plaintiffs are neither competitors nor

United States District Court
Northern District of California

8

consumers of iOS devices or Apple Pay.  Because Plaintiffs base their tying claim on a tie between the iOS device purchase and Apple Pay, Apple argues, Plaintiffs are not affected by the tie.  Moreover, according to Apple, Plaintiffs cannot show that they suffered an injury as participants in a multi-sided platform because they do not allege an increase in the cost of transactions above a competitive level when the transactions are evaluated as a whole.

Plaintiffs have alleged that the tie between iOS devices and Apple Pay constrains their choice of tap-and-pay iOS mobile wallets with which to participate.  Plaintiffs allege that Apple shields consumers from the costs of the tie by charging issuers and prohibiting issuers from passing along costs.  As a result, according to Plaintiffs, they have absorbed higher transaction fees than they would pay in a market without a tie.  Plaintiffs further allege that the transaction fees are not reasonably tied to the cost of the service, and they point to allegedly arbitrary price differentials between credit and debit transactions in support.  (Compl. ¶ 66.)  Plaintiffs plausibly allege that the tie results in injury to issuers and artificially inflated transaction costs when the multi-sided arrangement is considered as a whole.  Therefore, Plaintiffs have plausibly alleged antitrust standing.

### 2. Plaintiffs Do Not Allege a Plausible Tie Between iOS Devices and Apple Pay.

To state a claim for tying, a plaintiff must allege: "(1) that [the defendant] tied together the sale of two distinct products or services; (2) that [the defendant] possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market."  *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (citing *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2007)).  "A tie only exists where 'the defendant improperly imposes conditions that explicitly or practically require buyers to take the second product if they want the first one.'"  *Id*. (quoting 10 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 1752b (3d ed. 2011)).  Tying claims can be positive or negative, and "[t]he common element in both situations is that a seller explicitly or implicitly imposes conditions linking the sale of a tying product with the sale of the tied product."  *Id*.  Conduct toward third parties does not act as a condition of sale.  *Id.*

9

1   Apple argues that there is no tie because iOS device consumers are not required to use

2   Apple Pay and because Apple Pay is free to consumers.  The Court agrees.  Purchase of Apple Pay

3   cannot be a condition of purchase of an iOS mobile device because consumers do not actually

4   purchase Apple Pay or agree to forego purchase of other tap-and-pay iOS mobile wallets.  (*See*

5   Compl. ¶ 47.)  The Ninth Circuit's reasoning in *Aerotec* forecloses Plaintiffs' argument that there

6   is nevertheless effectively an agreement between iOS device consumers and Apple that the

7   consumers will not purchase competing tap-and-pay iOS mobile wallets.

8   In *Aerotec*, the plaintiff competed with Honeywell in the repair market for Honeywell

9   APUs, which were described as small engines that provide electrical power to airplanes.  836 F.3d

10   at 1175.  Honeywell dominated the APU market and the APU repair market, and Honeywell also

11   manufactured most of the replacement parts for its APUs.  *Id.* at 1176.  A parts shortage, parts

12   shipment delays, and a burdensome order process from Honeywell made it difficult for Aerotec to

13   cover its servicing contracts in the APU repair market.  *Id.* at 1177.  Aerotec alleged that the

14   shortage was part of a scheme by which Honeywell abused its monopoly over APU parts to drive

15   consumers in the repair market to Honeywell in order to obtain repairs.  *Id.*

16   Aerotec alleged that Honeywell unlawfully tied together APUs and APU repair services.

17   *Id.* at 1178.  However, Honeywell did not condition the initial sale of the APUs to purchasers on

18   using Honeywell services for repairs.  The Ninth Circuit ruled this circumstance could not be a tie,

19   and "decline[d] to stretch the tying construct to accommodate the claim that Honeywell's conduct

20   toward third party servicers—*i.e.*, parts delays, pricing decisions, and removal of technical data—

21   acts as an effective, or 'de facto,' condition on sale to airlines."  *Id.*  More explicitly, the court

22   reasoned that there cannot be a tie where there is "no evidence that Honeywell explicitly or

23   implicitly ties or conditions the *sale* of APU parts *to APU owners* on a requirement that the

24   owners 'buy and repair Honeywell' and/or forego services from independent service providers."

25   *Id.* at 1179 (emphasis in original).

26   *Aerotec* is directly on point.  Plaintiffs essentially allege a "de facto" tie between iOS

27   devices and Apple Pay because Apple's conduct toward third party competitors makes it

28   impossible for the competitors to compete with Apple Pay in the tap-and-pay iOS mobile wallet

United States District Court
Northern District of California

market.  As Plaintiffs acknowledge, consumers do not agree to limit their use of tap-and-pay iOS mobile wallets to Apple Pay, and consumers do not pay to install or use Apple Pay.  Thus, Plaintiffs do not plausibly allege that Apple conditions the sale of iOS devices to iOS device owners on an agreement that iOS device owners buy Apple Pay or forego purchase or use of competing tap-and-pay iOS mobile wallets.  The Court therefore GRANTS Apple's motion to dismiss Plaintiffs' tying claim.

**D.      Anticompetitive Harm.**

Apple argues that all of Plaintiffs' claims must fail because Plaintiffs do not allege anticompetitive harm.  Apple claims that Plaintiffs did not plausibly allege supracompetitive prices, that their allegations regarding output reduction are hypothetical and conclusory, and that their allegations about stifling innovation are contradicted by other allegations in the FAC.  Apple's arguments take issue with the interpretation of facts alleged in the FAC, rather than the sufficiency of the pleadings.  Plaintiffs have plausibly alleged that Apple Pay charges arbitrary and inflated fees to issuers, and that competition in the tap-and-pay iOS mobile wallet market would spur innovation and lead to lower prices.  The Court declines to dismiss the FAC for failure to plead anticompetitive harm, and it DENIES the motion to dismiss on this basis.

**E.      Refusal to Deal.**

Apple lastly argues that Plaintiffs fundamentally allege a refusal to deal, and that Plaintiffs do not allege the elements of a refusal-to-deal claim.  Plaintiffs respond that Apple does in fact deal with issuers, developers, and consumers, so Plaintiffs' claims cannot be recast as a refusal to deal claim.  As set forth above, the Court finds that Plaintiffs have plausibly alleged monopolization and attempted monopolization under the Sherman Act, and the Court DENIES the motion to dismiss on this basis.

//

//

//

//

//

United States District Court
Northern District of California

11

**CONCLUSION**

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Apple's motion to dismiss.  The parties shall appear for a case management conference on December 1, 2023, at 11:00 a.m.  The parties shall submit a joint case management statement by November 22, 2023.

**IT IS SO ORDERED.**

Dated: September 27, 2023

_____
JEFFREY S. WHITE
United States District Judge