LATHAM & WATKINS LLP
Belinda S Lee (Cal. Bar No. 199635)
 *belinda.lee@lw.com*
Sarah M. Ray (Cal. Bar No. 229670)
 *sarah.ray@lw.com*
Aaron T. Chiu (Cal. Bar No. 287788)
 *aaron.chiu@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

*Attorneys for Defendant Apple Inc.*

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (pro hac vice)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Ben M. Harrington (SBN 313877)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
benh@hbsslaw.com

SPERLING & SLATER, LLC
Eamon P. Kelly (*pro hac vice*)
Joseph M. Vanek (*pro hac vice*)
Jeffrey Bergman (*pro hac vice*)
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Telephone: (312) 676-5845
ekelly@sperling-law.com
jvanek@sperling-law.com
jbergman@sperling-law.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| AFFINITY CREDIT UNION, GREENSTATE CREDIT UNION, and CONSUMERS CO-OP CREDIT UNION, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC. <br><br> Defendant. | CASE NO. 4:22-cv-04174-JSW <br><br> **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** <br><br> Date:  December 1, 2023 <br> Time:  11:00 a.m. <br> Place:  Courtroom 5, 2nd Floor, Oakland <br> Judge:  The Honorable Jeffrey S. White |

1    Pursuant to this Court's September 27, 2023 Order, Local Rules 16-9 and the Standing

2    Order for All Judges of the Northern District of California, Plaintiffs Affinity Credit Union,

3    GreenState Credit Union, and Consumers Co-op Credit Union (together, "Plaintiffs"), and

4    Defendant Apple Inc. ("Apple") submit this Joint Case Management Conference Statement.

5    **1.**    **JURISDICTION AND SERVICE**

6    Plaintiffs have alleged that this Court has subject matter jurisdiction over the claims

7    brought by Plaintiffs under the Sherman Act, 15 U.S.C. §§ 1-3, pursuant to (1) 28 U.S.C. § 1337

8    and (2) 28 U.S.C. § 1331.  Apple was properly served with Plaintiffs' Amended Complaint on

9    October 28, 2022.

10   **2.**    **FACTS**

11   Plaintiffs' Statement:  The Court is familiar with the facts of this case, having already

12   upheld Plaintiffs' monopolization and attempted monopolization claims in denying Apple's

13   motion to dismiss. *See* ECF No. 64.  In brief, this action concerns restraints Apple has imposed in

14   the market for tap-and-pay mobile wallets on iOS devices.  Mobile wallets allow consumers to

15   make purchases at the point of sale by tapping their mobile device (typically either a smartphone

16   or smart watch) on a merchant's payment terminal.  On Android mobile devices, there are several

17   competing tap-and-pay mobile wallets to choose from, including Google Pay and Samsung Pay.

18   Apple, by contrast, has ensured that there is but one tap-and-pay mobile wallet on iOS devices—

19   its own proprietary service called Apple Pay.

20   Apple did not secure preeminence for Apple Pay by building a superior wallet.

21   Functionally, Apple Pay is indistinguishable from Google Pay and Samsung Pay.  Instead, Apple

22   propped up Apple Pay by barring all would-be competitors from accessing the near-field

23   communication ("NFC") technology that tap-and-pay wallets require to function.

24   Apple charges these issuers transaction fees that no other mobile wallet charges.  Plaintiffs

25   estimate that Apple charged issuers $1 billion in fees in 2019 alone.  By contrast, on the Android

26   ecosystem—where multiple wallets compete—issuer fees are $0.  To reach iOS digital wallet

27   users, payment card issuers like Plaintiffs thus have no choice but to enable their cards for Apple

28   Pay.  Nonetheless, Plaintiffs could attempt to discipline Apple's pricing by making consumers and

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT
CASE NO. 4:22-cv-04174-JSW

merchants aware of that pricing through a host of price and non-price mechanisms.  However, Apple prohibits price transparency and restrains Plaintiffs from signaling to consumers and merchants the true cost of Apple Pay.  These restraints allow Apple to charge supra-competitive prices.

Plaintiffs are not the first to raise these issues.  In May 2022, after completing an investigation, the European Commission issued a preliminary finding that Apple's restrictions on NFC technology are anticompetitive and likely violate European competition law.  The European Commission found that Apple's restrictions have "an exclusionary effect on competitors and lead[] to less innovation and less choice for consumers for mobile wallets on iPhones."  Am. Compl. at ¶ 9.

Through this action, Plaintiffs will show that Apple's conduct also has anticompetitive effects here in the United States, all in violation of the Sherman Act.

<u>Defendant's Statement</u>:  Apple designed and operates Apple Pay, a secure, private, and easy-to-use payment method that allows consumers to present a digital version of their existing payment cards on their iPhone, Apple Watch, iPad, and Mac.  At physical points-of-sale, Apple Pay allows users to complete a touchless transaction simply by holding an Apple device with a near-field-communication ("NFC") controller (e.g., an iPhone or Apple Watch) near an NFC terminal—as they would with any tap-and-pay credit card.  Apple Pay competes with many other payment methods, including:  (1) "tap-and-pay" payment cards (which also use NFC technology); (2) "chip" or traditional "swipe" payment cards; (3) cash; (4) non-NFC payment methods on Apple and other mobile devices (e.g., QR codes on PayPal); and (5) NFC payment methods on other mobile operating systems (e.g., Google Pay).  For online purchases, consumers also have many other options like Shop Pay, Amazon Pay, Google Pay, PayPal, credit and debit cards, and countless others.  Indeed, as this Court acknowledged, "iOS device consumers ***are not required to use Apple Pay***," ECF No. 64 at 10, which means that consumers use *other payment methods* to make purchases.  Apple Pay is just one of many ways consumers make payments, and just one payment method among many that financial institutions offer their consumers.  And it is, likewise, one of many ways that issuers make their payment cards available to consumers looking to make

credit and debit transactions.

Apple Pay provides numerous benefits for consumers, card issuers, merchants, and payment networks.  Contrary to Plaintiffs' assertion that Apple Pay is "[f]unctionally … indistinguishable" from Google Pay and Samsung Pay, Apple Pay's functionality is unique in the security and privacy it provides.  Indeed, in response to consumer demand for a mobile payment technology that offered more robust protections for users' sensitive financial data, Apple spent years designing a payment solution that is easy to use, achieves higher security standards, and offers a higher degree of privacy protection than any other solution.  This enhanced security has been a hallmark feature of Apple Pay since its launch in 2014, and its technologies—including Apple's development of a "tokenization" process that substitutes sensitive data with a non-sensitive "token"—were groundbreaking developments in the security of mobile payments.

The named Plaintiffs are three credit unions that seek to represent thousands of card issuers that offer their customers the ability to provision their payment cards for use with Apple Pay.  Apple does not charge Plaintiffs' customers—or any issuer's customers—a fee for using Apple Pay.  Instead, card issuers like Plaintiffs pay a nominal fee for each transaction facilitated by Apple Pay, which is the same for every issuer—big or small.  Apple Pay gives even the smallest issuers (like the Plaintiffs here) the ability to offer an easy digital payment option to their customers, leading to increased output in mobile payment transactions.

Finally, Plaintiffs' statements about the European Commission ("EC") investigation are incorrect.  The EC has not "found" anything about Apple Pay or its purported effects.  The EC has not issued a decision on its investigation—only a Statement of Objections, which is a "preliminary" document.  As the EC stated when it issued the Statement of Objections: "The sending of a Statement of Objections does not prejudge the outcome of an investigation."  *See* https://ec.europa.eu/commission/presscorner/detail/en/ip_22_2764.

**3.**   **LEGAL ISSUES**

Plaintiffs' Statement:  In upholding Plaintiffs' monopolization claims on Apple's motion to dismiss, the Court concluded that "Plaintiffs have plausibly alleged an aftermarket for tap-and-pay iOS mobile wallets." ECF No. 64 at 7.  The Court further concluded that Plaintiffs have

plausibly alleged that Apple's restraints in this aftermarket have led to "arbitrary and inflated fees to issuers, and that competition in the tap-and-pay iOS mobile wallet market would spur innovation and lead to lower prices." *Id.* at 11.  The Court dismissed Plaintiff's separate tying claim, while rejecting Apple's contention that Plaintiffs allege only a "refusal to deal." *Id.*

In addition to the market definition issues addressed at the motion-to-dismiss stage, Plaintiffs anticipate further disputes on the following points of law:

1.     Whether Apple's conduct has anticompetitive effects;

2.     Whether Plaintiffs are entitled to damages and the amount thereof;

3.     Whether Apple's conduct warrants injunctive and/or declaratory relief;

4.     Whether Apple has asserted any cognizable affirmative defense; and

5.     Whether a class can be certified pursuant to Rule 23(a) and (b)(1)-(3) of the Federal Rules of Civil Procedure.

<u>Defendant's Statement</u>:  Apple denies that it violated any laws.  Plaintiffs cannot prove their claim under Section 2 of the Sherman Act, this case is not maintainable as a class action, and Plaintiffs are not entitled to any relief.

This Court already dismissed the lead claim in Plaintiffs' Amended Complaint, which alleged that Apple unlawfully conditions the purchase of Apple's mobile devices on the purchase of Apple Pay.  *See* ECF No. 64 at 9–11.  The Court agreed with Apple that there is no unlawful tie between Apple's mobile devices and Apple Pay "because iOS device consumers are not required to use Apple Pay and because Apple Pay is free to consumers." *Id.* at 10.  All that remains is Plaintiffs' claim that Apple monopolized a supposed "Tap-and-Pay iOS Mobile Wallets" market, which Plaintiffs allege is a single-brand aftermarket limited exclusively to Apple Pay.  *See also* Order on Mot. to Dismiss, ECF No. 64 at 8 (holding that "Plaintiffs' allegations are sufficient to pursue a claim based on the alleged aftermarket").   This claim fails at the threshold because this purported aftermarket is implausible.  To prove that an aftermarket exists, as this Court has recognized, Plaintiffs must demonstrate (among other things) that "general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market."  Order on Mot. to Dismiss, ECF No. 64 at 10 (quoting *Epic Games, Inc. v. Apple, Inc.*,

67 F.4th 946, 976 (9th Cir. 2023)).  Plaintiffs will be unable to prove this:  Apple Pay is just one of many substitutable payment methods that consumers can (and do) use to make payments, merchants can (and do) use to accept payment, and financial institutions can (and do) offer to their consumers.  Plaintiffs' purported aftermarket does not "bear the 'practical indicia' of an independent economic entity" and therefore it is not a cognizable market.  *See Epic*, 67 F.4th at 977 (quoting *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1051 (9th Cir. 2008)).  As a result, Plaintiffs' sole remaining claim fails.

Apple also anticipates that the following legal issues may be raised:

1. To the extent that Plaintiffs seek to represent issuers that executed Apple Pay agreements before the limitations period in this case, whether those claims are time-barred under the Clayton Act's 4-year statute of limitations.  15 U.S.C. § 15b.

2. Whether Plaintiffs' and members of the purported class's claims are precluded by the releases and covenants contained within their contracts with Apple.

3. Whether Plaintiffs' and members of the purported class's claims are precluded by the releases and covenants in the settlement with developers in *Cameron, et al. v. Apple Inc*, No. 4:19-cv-03074-YGR (N.D. Cal.).

Apple raised additional legal issues in its affirmative defenses, *see* ECF No. 66, and reserves the right to amend those defenses.

### 4.   **MOTIONS**

***Previously Filed Motions:***  Apple filed a motion to dismiss Plaintiffs' Amended Complaint on November 23, 2022.  *See* ECF No. 44.  On September 27, 2023, the Court issued an order granting in part and denying in part Apple's motion.  ECF No. 64.  In particular, the Court: (1) granted Apple's motion to dismiss Plaintiffs' tying claim; and (2) denied Apple's motion to dismiss Plaintiffs' monopolization claim on the basis that "Plaintiffs' allegations are sufficient to pursue a claim based on the alleged aftermarket."  *Id.* at 8, 11.

On March 10, 2023, Apple filed a motion to stay discovery pending resolution of its motion to dismiss.  *See* ECF No. 48.  The Court granted the motion on April 14, 2023.  *See* ECF No. 61.

1     ***Anticipated Motions:*** The Parties anticipate that other pre-trial motions will be filed,

2 including motions for class certification and summary judgment.

3 **5.**     **AMENDMENT OF PLEADINGS**

4     Plaintiffs reserve all rights to amend their complaint, either by right or upon leave of the

5 Court, but do not presently anticipate any further amendments.

6 **6.**     **EVIDENCE PRESERVATION**

7     The Parties certify that they have reviewed the Court's ESI Guidelines and confirm that

8 they have taken steps to preserve ESI and will continue to do so.

9 **7.**     **DISCLOSURES**

10     The Parties intend to exchange initial disclosures on December 8, 2023.

11 **8.**     **DISCOVERY TO DATE**

12     The Court granted Apple's motion to stay discovery on April 14, 2023. ECF Dkt. No. 41.

13 The Parties are presently negotiating a protective order and ESI protocols. The Parties presently

14 do not have any discovery disputes that require the Court's attention.

15 **9.**     **DISCOVERY LIMITATIONS**

16     The Parties reserve all rights to request departure from default limitations on the number

17 of depositions and interrogatories permitted per side. *See* Fed. R. Civ. P. 30(a)(2)(A)(i) & 33(a)(1).

18 The Parties agree to meet and confer in good faith regarding any potential increase in the number

19 of depositions and interrogatories per side, when appropriate. The Parties further agree that expert

20 and third-party depositions shall not count against the number of depositions per side.

21 **10.**     **CLASS ACTIONS**

22     Plaintiffs' Statement: Plaintiffs intend to pursue certification pursuant to Fed. R. Civ. P.

23 23(a) and (b)(1)-(3) of a class comprised of "All U.S. entities that (a) issued any Payment Card

24 enabled for Apple Pay and (b) paid Apple a fee for any Apple Pay transaction on that Payment

25 Card." Plaintiffs propose filing a motion for class certification pursuant to its proposed schedule

26 set forth below at ¶ 18. Plaintiffs' motion will demonstrate that certification is warranted for at

27 least the following reasons:

28     Numerosity: The exact number of the members of the proposed class is not available to

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT
CASE NO. 4:22-cv-04174-JSW

Plaintiffs at this time, but upon information and belief, the class will consist of many thousands of members such that individual joinder in this case is impracticable. Apple publishes a list of financial institutions participating in Apple Pay. That list contains more than 4,000 issuers.

Commonality: Numerous questions of law and fact are common to the claims of Plaintiffs and the proposed class. These include, but are not limited to: (a) whether Plaintiffs have established a relevant antitrust market; (b) whether Apple unlawfully monopolized, or attempted to monopolize, that relevant market; (c) whether competition in the relevant market has been constrained or harmed by Apple's conduct; (d) whether issuers have been harmed, including by way of having paid higher transaction fees than they would have but for Apple's allegedly anticompetitive conduct; (e) whether Plaintiffs and members of the proposed class are entitled to declaratory or injunctive relief, and to their attorney fees, costs, and expenses; and (f) whether Plaintiffs and members of the proposed class are entitled to any damages incidental to the declaratory or injunctive relief they seek, or otherwise.

Typicality: Plaintiffs' claims are typical of the claims of the members of the proposed class. The factual and legal bases of Apple's liability are the same and resulted in injury to Plaintiffs and all members of the proposed class.

Adequate representation: Plaintiffs will represent and protect the interests of the proposed class both fairly and adequately. Plaintiffs have retained counsel competent and experienced in complex class-action litigation. Plaintiffs have no interests that are antagonistic to those of the proposed class, and its interests do not conflict with the interests of the proposed class members it seeks to represent. Class counsel have been investigating the claims asserted in this case since August 2021, have invested substantial resources developing these claims, and are qualified and best positioned to lead the representation of the proposed class.

Prevention of inconsistent or varying adjudications: If prosecution of myriad individual actions for the conduct complained of were undertaken, there may be inconsistent or varying results. This would have the effect of establishing incompatible standards of conduct for Apple. Certification of Plaintiffs' proposed class would prevent these undesirable outcomes.

Injunctive and declaratory relief: Apple has acted on grounds that apply generally to the

proposed class. Accordingly, final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Predominance and superiority: Common issues predominate and class proceedings on these facts and this law are superior to all other available methods for the fair and efficient adjudication of this controversy. Even if members of the proposed class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the delay and expense to the parties due to the complex factual and legal controversies present in this matter. Here, the class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court.

Defendant's Statement:  Plaintiffs cannot satisfy the requirements set forth in Fed. R. Civ. P. 23, and Apple will oppose any motion for class certification.

All attorneys of record reviewed the Procedural Guidance for Class Action Settlements.

## 11.   RELATED CASES

The Parties believe that there are presently no related cases or related proceedings pending before another judge of this Court, before another U.S. court, or before a U.S. administrative body.

## 12.   RELIEF

Plaintiffs' Statement:  At this preliminary stage, Plaintiffs are unable to ascertain the full quantum of damages resulting from Apple's challenged conduct.  Plaintiffs have not yet obtained discovery, and anticipate that the amount of damages will be evaluated and informed by expert analysis in accordance with the schedule set by the Court.

In addition to seeking damages, Plaintiffs are pursuing injunctive, declaratory and other relief, as specified in the Amended Complaint's Prayer for Relief.

Defendant's Statement:  As noted above, Apple disputes that Plaintiffs are entitled to any relief and reserves all of its defenses to liability and damages.

## 13.   SETTLEMENT AND ADR

The Parties have not yet conferred regarding settlement or engaged in ADR, and the Parties believe that ADR or settlement efforts are premature at this point.   The Parties filed ADR

Certification forms on April 5, 2023.  *See* ECF Nos. 56, 58–60.

**14.     CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The Parties do not consent to have a magistrate judge conduct all further proceedings.

**15.     OTHER REFERENCES**

The Parties do not believe that this action is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**16.     NARROWING OF ISSUES**

Plaintiffs' Statement:  Plaintiffs are considering whether any issues in the case may be narrowed by agreement or motion, and whether there should be any bifurcation of issues, claims, or defenses as the action progresses.

Defendant's Statement:  The Court has dismissed Plaintiffs' tying claims.  All that remains is Plaintiffs' claim that Apple monopolized a purported "Tap-and-Pay iOS Mobile Wallets" aftermarket in violation of Section 2 of the Sherman Act.  Apple is considering whether the remaining issues can be narrowed by agreement or by motion, and how to expedite the presentation of evidence at trial.

**17.     EXPEDITED TRIAL PROCEDURE**

The Parties do not believe this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A.

**18.     SCHEDULING**

The Parties propose the following case schedule:

| EVENT | JOINT PROPOSED DEADLINE |
|---|---|
| Exchange of Initial Disclosures | December 8, 2023 |
| Substantial Completion of Production of Documents and Data | June 20, 2024 (with rolling productions being made throughout the discovery period as materials are ready to be produced) |
| Class Certification Motion and Supporting Expert Report(s) | September 6, 2024 |
| Exchange Expert Backup Materials for Class Certification Motion | September 10, 2024 (by 5 p.m.) |
| Class Certification Opposition and Supporting Expert Report(s) | December 17, 2024 |

| EVENT | JOINT PROPOSED DEADLINE |
|---|---|
| Exchange Expert Backup Materials for Class Certification Opposition | December 20, 2024 (by 5 p.m.) |
| Class Certification Reply and Expert Rebuttal Report(s) | February 25, 2025 |
| Exchange Expert Backup Materials for Class Certification Reply | February 28, 2025 (by 5 p.m.) |
| Close of Fact Discovery | April 12, 2025 |
| Exchange of Expert Report(s)[1] | Earlier of August 21, 2025 or 8 weeks after Court's ruling on Class Certification Motion |
| Exchange of Expert Reply Report(s) | 8 weeks after Exchange of Expert Report(s) |
| Close of Expert Discovery | 4 weeks after Exchange of Merits Expert Replay Report(s) |
| Dispositive and Related *Daubert* Motions | 8 weeks after Close of Expert Discovery |
| Dispositive and Related *Daubert* Responses | 8 weeks after Dispositive and *Daubert* Motions |
| Dispositive and Related *Daubert* Replies | 6 weeks after Dispositive and *Daubert* Responses |
| Hearing on all Dispositive and *Daubert* Motions | To be set by the Court |
| Trial Date | TBD |

**19.   TRIAL**

Plaintiffs request a jury trial.  The Parties are currently unable to estimate the length of trial and propose that the Court set a trial date after ruling on summary judgment motions.

**20.   Disclosure of Non-Party Interested Entities or Persons**

The Parties filed Certifications of Interested Entities or Persons pursuant to Civil Local Rule 3-15.  *See* ECF Nos. 30, 35, 49 & 50.  As of this date, there are no such interests to report.

**21.   Professional Conduct**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

---

[1] With respect to the exchange of expert backup materials at the merits phase, the Parties agree to produce such materials by 5 p.m. within two business days of the deadline for the expert report.

1    Dated: November 17, 2023                   Respectfully submitted,

2                                               **HAGENS BERMAN SOBOL SHAPIRO LLP**

3                                               By  */s/ Ben M. Harrington*
                                                Ben M. Harrington (SBN 313877)
4                                               715 Hearst Avenue, Suite 202
                                                Berkeley, CA 94710
5                                               Telephone: (510) 725-3000
                                                Facsimile:  (510) 725-3001
6                                               benh@hbsslaw.com

7                                               Steve W. Berman (*pro hac vice*)
                                                1301 Second Avenue, Suite 2000
8                                               Seattle, WA 98101
                                                Telephone: (206) 623-7292
9                                               Facsimile:  (206) 623-0594
                                                steveb@hbsslaw.com
10
                                                **SPERLING & SLATER, LLC**
11                                              Eamon P. Kelly (*pro hac vice*)
                                                Joseph M. Vanek (*pro hac vice*)
12                                              Jeffrey Bergman (*pro hac vice*)
                                                55 W. Monroe Street, 32nd Floor
13                                              Chicago, IL 60603
                                                Telephone: (312) 676-5845
14                                              Facsimile:  (312) 641-6492
                                                ekelly@sperling-law.com
15                                              jvanek@sperling-law.com
                                                jbergman@sperling-law.com
16
17                                              *Attorneys for Plaintiffs and the Proposed Class*

18   Dated: November 17, 2023                   Respectfully submitted,

19                                              **LATHAM & WATKINS LLP**
                                                By:  */s/ Belinda S Lee*
20                                                      Belinda S Lee

21                                              Belinda S Lee (Cal. Bar No. 199635)
                                                 *belinda.lee@lw.com*
22                                              Sarah M. Ray (Cal. Bar No. 229670)
                                                 *sarah.ray@lw.com*
23                                              Aaron T. Chiu (Cal. Bar No. 287788)
                                                 *aaron.chiu@lw.com*
24                                              505 Montgomery Street, Suite 2000
                                                San Francisco, California 94111-6538
25                                              Telephone: +1.415.391.0600

26                                              *Attorneys for Defendant Apple Inc.*

27

28

                                                11

1

## SIGNATURE ATTESTATION

2          I, Belinda S Lee, am the ECF User whose identification and password are being used to

3   file the foregoing Joint Case Management Conference Statement.  Pursuant to Local Rule 5-1(i)(3)

4   regarding signatures, I attest that concurrence in the filing of this document has been obtained.

5

6   Dated:  November 17, 2023                    Respectfully submitted,

7                                                LATHAM & WATKINS LLP

8
                                                 By:    */s/ Belinda S Lee*
9                                                       Belinda S Lee
                                                        Attorney for Defendant Apple Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28