UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AFFINITY CREDIT UNION, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>APPLE INC.,<br><br>　　　　　　Defendant. | Case No. 22-cv-04174-JSW<br><br>**ORDER RESOLVING DISCOVERY DISPUTE REGARDING APPLE DOCUMENT CUSTODIANS**<br><br>Re: Dkt. No. 82 |

　　　　Now before the Court for consideration is the Joint Letter Brief re: Custodians Dispute. (Dkt. No. 82, "Letter.") The Court has considered the papers, relevant legal authority, and the record in this case, and it finds the Letter appropriate for resolution without further briefing or telephone conference. *See* Civ. L.R. 7-1(b); Civil Standing Order No. 7.

## BACKGROUND

　　　　Plaintiffs Affinity Credit Union, GreenState Credit Union, and Consumers Credit Union ("Plaintiffs") bring a putative class action against Defendant Apple, Inc. ("Apple") for alleged violation of antitrust laws in connection with Apple Pay and contactless payment technology available on iOS devices. Plaintiffs claim that Apple unlawfully monopolizes and has attempted to monopolize the market for tap-and-pay mobile wallets on iOS by restricting access to Near Field Communication ("NFC") chips on iOS devices. (Dkt. No. 40, Compl., ¶¶ 1, 4, 11.) Developers may access the NFC chip for functionality that does not compete with Apple Pay, but they may not use the chip to support tap-and-pay mobile wallets. (*Id.* ¶ 49.)

## ANALYSIS

　　　　Plaintiffs and Apple dispute which document custodians are likely to possess relevant and proportional discovery. They seek Court intervention to resolve an impasse as to five potential

1 custodians.

**A.   Legal Standards.**

Federal Rule of Civil Procedure 26(b) provides that parties may obtain discovery regarding

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). A court "must limit the frequency or extent of discovery otherwise allowed" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 34 authorizes parties to serve on other parties "a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information. . . ." Fed. R. Civ. P. 34(a). A responding party must, "[f]or each item or category, . . . state that inspection. . . will be permitted as requested or state with specificity the grounds for objecting to the request. . . ." Fed. R. Civ. P. 34(b)(2)(B).

The party seeking discovery bears the burden of demonstrating that its request is relevant under Rule 26. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). The burden then shifts to the opposing party to show why the discovery should not be allowed. *Id.*

**B.   The Apex Doctrine Does Not Apply Here.**

Courts routinely decline to order depositions of high-ranking executives due to the "apex doctrine." The apex doctrine is a judicially created exception to Rule 26's broad authorization of discovery, and it serves to protect defendants from abusive or harassing discovery when less burdensome options are available. *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263

(N.D. Cal. 2012). "[T]he closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become." *Id.*

The apex doctrine loses relevance in the context of document production because documents may be produced with no or minimal involvement of the apex witness. *See L.A. All. v. City of Los Angeles*, No. 2:20-CV-2291-DOC, 2023 WL 5505037, at *6 (C.D. Cal. Aug. 2, 2023) ("Unlike depositions of high-ranking officials. . ., discovery requests like written interrogatories or requests for production tend to be less time-consuming and distracting.").

Apple urges the Court to nevertheless apply the apex doctrine to document custodians. In support, it offers three cases in which courts have declined to require production from additional custodians. None of these decisions turned on the apex doctrine. *See Handloser v. HCL Am., Inc.*, No. 19-cv-01242-LHK-VKD, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) (declining to add two "executive" custodians where plaintiffs failed to demonstrate the requests were not duplicative and had previously obtained discovery from the "U.S. heads of the relevant departments"); *Lauris v. Novartis AG*, No. 16-cv-00393LJOSAB, 2016 WL 7178602, at **3-4 (E.D. Cal. Dec. 8, 2016) (finding that apex doctrine does not apply to document discovery, but holding discovery requests unlikely to yield new, unique documents); *Roblox Corp. v. WowWee Grp. Ltd.*, No. 22-cv-04476-SI, 2023 WL 5507176, at *3 (N.D. Cal. Aug. 25, 2023) (noting defendants objected on "apex custodian" basis, but denying discovery because plaintiff's belief that executive had relevant information was purely speculative).

The Court finds that the apex doctrine does not apply to requests for documents. Rule 26 suffices to protect parties from unduly burdensome, expensive, or harassing discovery. Depositions of "apex witnesses" merit extra guardrails in part because of the time required to prepare for and attend depositions, the cost to the company and to productivity writ large, and the potential for abuse. Apple has not made a showing—or even argued—that similar considerations are present in the context of document production. In the absence of such a showing, the Court declines to expand the doctrine.

**C.   Apple Must Produce Responsive Documents from Certain of the Additional Custodians, but Not All.**

   **1.   The Court Will Not Require Production from Tim Cook (CEO).**

Plaintiffs contend that Mr. Cook is involved with Apple Pay "at a strategic level" and that he followed Apple Pay's development "pretty closely." (Letter, at 1.) Plaintiffs note that Mr. Cook personally worked with financial institutions and payment networks to launch and grow Apple Pay, and that he was involved in internal discussions regarding Apple Pay's development. Plaintiffs also cite a quote from Mr. Cook in which he noted that he "was flooded with emails" from customers upon the launch of Apple Pay. (*Id.*)

Apple contends that Mr. Cook does not possess significant amounts of unique data, and that emails from customers are irrelevant to the facts in issue in the case. Apple further points out that it has agreed to produce documents from Jennifer Bailey (VP, Internet Services: Wallet, Payments and Commerce), a senior official who oversaw the launch of Apple Pay.

The Court agrees with Apple. Plaintiffs have made a weak showing that Mr. Cook may possess some responsive documents. Given Ms. Bailey's purported role in launching and overseeing Apple Pay, it is unlikely that Mr. Cook has non-cumulative documents in his possession which warrants the expense of adding Mr. Cook as a custodian.

   **2.   Apple Must Produce Documents from Eddy Cue (SVP, Services).**

Plaintiffs seek discovery from Mr. Cue on the basis that his Apple website profile states he "oversees" Apple Pay. Plaintiffs also include exemplar correspondence and conference agenda indicating Mr. Cue plays a role in strategic decisions relating to Apple Pay.

Apple responds that Mr. Cue oversees all Apple services, including Apple Music, Apple News, Apple Podcasts, the Apple TV app, Apple TV+, and more. It contends that the custodians offered by Apple possess more relevant information because they are more closely involved with the operations and decision-making for Apple Pay than Mr. Cue.

Plaintiffs have made a showing that Mr. Cue possesses unique, discoverable documents. Plaintiffs' exemplar correspondence between Mr. Cue and an executive at Visa shows that Mr. Cue had correspondence with key players regarding access to Apple Pay on which no other Apple employees, including Ms. Bailey, were carbon copied. Accordingly, Mr. Cue is an appropriate

4

custodian.

### 3. Apple Need Not Produce Documents from Craig Federighi (SVP, Software Engineering).

Plaintiffs argue that Mr. Federighi is an appropriate custodian because he played a strategic role regarding the technological aspects of the NFC restraint. Plaintiffs provide correspondence between Mr. Federighi and Ms. Bailey in 2015 relating to the schedule for Apple Pay as an example of Mr. Federighi's strategic role. Plaintiffs contend that discovery from Kartik Subramanian (Director of Product Management, Apple Pay and Apple Wallet) cannot substitute for discovery from Mr. Federighi because Mr. Subramanian did not join Apple until 2018.

Apple contends that discovery from Mr. Federighi would be duplicative of discovery from Mr. Subramanian. According to Apple, Mr. Subramanian is the most knowledgeable and comprehensive source of information on the technological and strategic aspects of the NFT restraint.

Both sides' positions are well-taken. Mr. Subramanian appears better positioned than Mr. Federighi to provide documents relating to the NFT restraint as of 2018, but Mr. Federighi appears to have played a key role in the development of Apple Pay. However, because the Court finds below that Mr. Fugman is an appropriate custodian and possesses documents from the relevant time period, discovery from both Mr. Fugman and Mr. Federichi may be redundant. Accordingly, the Court will not require Apple to designate Mr. Federighi as a document custodian.

### 4. Apple Must Produce Documents from Eric Hoffman (Former Director, Apple Pay Business Development).

Plaintiffs claim that Mr. Hoffman "managed Apple Pay's partnerships with Card Issuing Banks," which is the putative class. (Letter, at 2.) Plaintiffs have discovered Mr. Hoffman's name on thousands of documents produced by Apple to date.

Apple responds that Mr. Hoffman does not possess unique documents. His business development role "largely mirrors" that of David Parker, who is provided as a custodian. (Letter, at 8.) Apple also contends that Mr. Hoffman's role "overlapped with the responsibilities" of Dan Ewing, another custodian. (*Id.*)

It is unclear to the Court why an overlap in responsibilities with other custodians would

5

indicate a perfect overlap in responsive documents.  Plaintiffs have made a showing that discovery into Mr. Hoffman's records is relevant, and Apple has not made a countervailing showing of why discovery should not be allowed.  Accordingly, Mr. Hoffman is an appropriate custodian.

### 5. Apple Must Produce Documents from Corey Fugman (Senior Director, Apple Pay and Wallet).

Plaintiffs seek production from Mr. Fugman because he supervises Mr. Subramanian and is named in thousands of documents in Apple's productions relating to the development and launch of Apple Pay.  Apple opposes on the basis that Mr. Fugman's documents will overlap with Mr. Subramanian's and "the EC documents."[1]  (Letter, at 8.)

Given that Mr. Subramanian did not join Apple until 2018, Mr. Fugman is likely to possess relevant documents that Mr. Subramanian does not.  To minimize duplication, Apple must produce responsive documents in Mr. Fugman's custody through 2018 only.

Plaintiffs may seek leave to search more recent documents in Mr. Fugman's custody or control if they believe they can make a good faith showing that such discovery is necessary and not duplicative.

### CONCLUSION

For the foregoing reasons, Messrs. Cue, Hoffman, and Fugman are appropriate document custodians.  Apple may exclude responses from 2019 onward from its searches into Mr. Fugman's documents.  The Court will not require Apple to designate Mr. Cook and Mr. Federighi as document custodians.

**IT IS SO ORDERED.**

Dated: August 16, 2024

_____
JEFFREY S. WHITE
United States District Judge

---

[1] Neither party defines the "EC documents."  The Court assumes that "EC" refers to the European Commission, and that the documents were produced in response to an EC investigation.